UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARK ROTELLA, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) |
| | ) 3:08-CV-0486-G |
| MID-CONTINENT CASUALTY | ) |
| COMPANY, | ) **ECF** |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the third party defendant, Joan Cutting ("Cutting"), for a turnover order pursuant to Texas Civil Practice and Remedies Code § 31.002(a). For the reasons discussed below, the motion is denied.

## I. BACKGROUND

The court set forth the following facts relating to this case in its order denying Cutting's motion for a temporary restraining order. *See* Memorandum Opinion and Order, May 8, 2009.

The plaintiffs, Mark Rotella Custom Homes, Inc., d/b/a/ Benchmark Custom Homes, and Mark David Rotella (collectively, "the plaintiffs" or "Rotella"), build

custom homes.  Joan Cutting's Brief in Support of Application and Motion for Temporary Restraining Order and Preliminary Injunction against Mark Rotella, Mark Rotella Custom Homes, Inc., Benchmark Custom Homes, and Mid-Continent Casualty Company ("Motion for TRO") at 2.  Rotella built one such home for Cutting.  *Id.*  Cutting was dissatisfied with Rotella's services and filed suit against the plaintiffs in state court.  *Id.*  In that underlying suit, she alleged that Rotella had engaged in fraudulent billing practices, that he had breached the parties' contract, and that her home contained numerous defects.  *Id.*  Cutting prevailed in that lawsuit and obtained a judgment against Rotella.  *Id.*  Rotella had purchased a commercial general liability ("CGL") policy from Mid-Continent.  *Id.* at 3.  Rotella believed this policy required Mid-Continent to both defend him in the underlying lawsuit and indemnify him for any unfavorable judgment Cutting might obtain.  *Id.*  Mid-Continent, however, disagreed, and refused to defend Rotella, and has to this day refused to indemnify Rotella for the amount of the judgment Cutting has obtained against him.  *Id.*  As a result, Rotella filed this suit against Mid-Continent seeking a determination that Mid-Continent had a duty to defend him and must now indemnify him.

The parties involved in this case participated in a mediation on April 28, 2009.  *Id.*  During that mediation, the plaintiffs and defendant were able to reach a partial settlement.  *Id.*  at 3-4.  Mid-Continent and Rotella agreed that Mid-Continent would compensate Rotella for a certain amount, in satisfaction of Rotella's claim against

Mid-Continent for the attorneys' fees incurred in defending the underlying suit. Mid-Continent's Brief in Support of its Response to Joan Cutting's Application and Motion for Temporary Restraining Order and Preliminary Injunction against Mark Rotella, Mark Rotella Custom Homes, Inc. d/b/a/ Benchmark Custom Homes and Mid-Continent Casualty Company ("Mid-Continent's Response") at 3. Cutting believes she is entitled to this settlement money to help satisfy the judgment against Rotella awarded to her by the state court. Motion for TRO at 4. She fears, however, that if Rotella receives these funds, he will never make them available to her and thus she will never recover them. *Id.*

In light of these facts, Cutting has filed the instant motion for a turnover order pursuant to Texas Civil Practice & Remedies Code § 31.002(a) ("the Texas Turnover statute").

## II. ANALYSIS

The Texas Turnover statute provides that a judgment creditor is entitled to assistance from a court of appropriate jurisdiction in satisfying a judgment. TEX. CIV. PRAC. & REM. CODE § 31.002(a). Specifically, the statute allows a judgment creditor to reach property to obtain satisfaction on the judgment if (1) the judgment debtor owns property, including present or future rights to property, (2) that property cannot readily be attached or levied on by ordinary legal process, and (3) that

property is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. *Id.* The court will discuss these elements below.

### A. *Does Rotella Own the Settlement Amount?*

The first question for the court to decide is whether Rotella owns the settlement amount. According to § 31.002(a), a judgment debtor must own property in order for that property to be subject to turnover. TEX. CIV. PRAC. & REM. CODE § 31.002(a). However, the statute also states that property to which a debtor has "present or future rights" is subject to turnover. Furthermore, Texas courts have held that the statute "allows a court to reach assets owned by and subject to the control of a judgment debtor, even if those assets are in the hands of a third party." *Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). Here, Mid-Continent has agreed to pay a certain sum to Rotella as compensation for the attorneys' fees he incurred in defending the underlying lawsuit. As of today, however, Mid-Continent has not yet paid that sum. Thus, the court must determine whether Rotella "owns" the settlement amount for purposes of the Texas Turnover statute.

This court's review of Texas cases leads it to conclude that Rotella does "own" the settlement amount, although the funds are not yet in his possession. In *Cross, Kieschnick & Company v. Johnston*, 892 S.W.2d 435, 438 (Tex. App.--San Antonio 1994, no writ), the court observed that property subject to turnover relief includes

"contract rights receivable, accounts receivable, . . . or rights to receive money at a future date."  Here, the settlement agreement between Rotella and Mid-Continent provides that Mid-Continent will pay $200,000 to Rotella within thirty days. Appendix in Support of Joan Cutting's Emergency Motion for Turnover Order at App. 013-14.  Thus, Rotella has the right to receive that money at a future date. Furthermore, under Texas law, "a settlement agreement is a contract, and is governed by principles generally applicable under contract law."  *Franco v. Ysleta Independent School District*, __ S.W.3d __, 2009 WL 638261, *3 (Tex. App.--El Paso March 12, 2009, no pet. h.).  Thus, Rotella has a contractual right to receive the receive the $200,000 at a future date.  Should Mid-Continent refuse to pay the $200,000, Rotella will have a cause of action against Mid-Continent for breach of contract.  See *id.*  Under Texas law, even if Rotella had *only* a cause of action for breach of contract against Mid-Continent, that cause of action would be property subject to turnover. *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 627 (Tex. App.--Fort Worth 2006, pet. denied) (stating that "a cause of action is property to which the turnover statute applies").  Thus, the court concludes that Rotella "owns" the settlement amount for purposes of the Texas Turnover statute.

    B.  *Are the Settlement Proceeds Readily Available by Ordinary Legal Process?*

Rotella contends that plaintiffs are not entitled to a turnover order unless they first make reasonable efforts to reach his business interests and properties through

ordinary legal process, such as a writ of execution or a writ of garnishment. Mark Rotella and Mark Rotella Custom Homes, Inc. d/b/a Benchmark Custom Homes' Response and Brief to Joan Cutting's Emergency Motion for Turnover Order ("Response") at 5. However, "[n]either the statute nor the case law provides a corresponding requirement that the judgment creditor demonstrate that other methods of collecting the judgment have failed." *Resolution Trust Corporation v. Smith*, 53 F.3d 72, 77-78 (5th Cir. 1995) (citing *Hennigan v. Hennigan*, 666 S.W.2d 322, 323 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.) (rejecting the argument that the former version of the turnover statute requires a judgment creditor to "'first exhaust his legal remedies of attachment, execution, garnishment, etc., prior to seeking relief.'")). Thus, the fact that Cutting has not first attempted to obtain the $200,000 through other available remedies does not make the turnover statute inapplicable.

The court must still consider, however, whether it would be difficult for Cutting to obtain the $200,000 through ordinary legal process. Although Texas law does not require a party seeking relief under the Texas Turnover statute to first exhaust all other possible remedies, the plain language of the statute makes clear that ordinary legal process must not be "readily available." TEX. CIV. PRAC. & REM. CODE § 31.002(a). The Texas Turnover statute and Texas case law interpreting the statute provide very little guidance in determining when ordinary legal process is readily

available. Here, Cutting asserts that it will be difficult for her to obtain the $200,000 if Rotella receives it first, because "Rotella's history of theft, fraud, and non-payment of debts to his creditors, coupled with his sworn testimony that he does not intend to pay Cutting's judgment, [demonstrates] a substantial likelihood that the funds may disappear or be spent by Rotella." Joan Cutting's Emergency Motion for Turnover Order ("Emergency Motion") at 2.

There is some indication that under Texas law, where a judgment debtor has demonstrated an unwillingness to pay his judgment creditor, ordinary legal process may be insufficient to allow the judgment creditor to collect. *World Fuel Services Corporation v. Moorehead*, 229 F.Supp.2d 584, 587 (N.D. Tex. 2002). In *Moorehead*, a judgment debtor attempted to conceal the fact that he owned assets that would satisfy his debt. *Id.* In addition, many of the debtor's assets had been "pledged to various third parties." *Id.* The court reasoned that this made the assets difficult to obtain through ordinary legal process. *Id.* Further, in the period after the entry of judgment, the debtor had "liquidated, transferred, and encumbered assets," all of which led the court to conclude that the debtor was attempting to make his assets unavailable to his judgment creditor. *Id.* Finally, the debtor's assets included "corporate stock, debentures, a brokerage account, partnership and membership interest in various entities, bonds, and accounts receivables." *Id.* The court held that these types of assets "are the types of property and property interests the Texas

- 7 -

legislature contemplated the statute would reach." *Id.* All these factors combined to convince the court that the assets would not be readily available without a turnover order. *Id.*

Here, however, there is no evidence that Rotella has attempted to conceal his assets from the court or from Cutting. Nor is there evidence that he has liquidated, transferred, or encumbered his assets. The property at issue here is not corporate stock, debentures, brokerage accounts, partnership and membership interests, bonds, or accounts receivable. Rather, Cutting is seeking the rights to the $200,000 pursuant to the settlement agreement, the right to pending lawsuits -- including this one -- and the right to any payment pursuant to those pending lawsuits. The only similarity between the case at bar and *Moorehead* is that Rotella owes money to other parties. Thus, Rotella's money is "pledged" to other parties, just as the judgment debtor in *Moorehead*. This one similarity is insufficient to induce the court to follow the holding of *Moorehead*.

Moreover, in *Honaker*, the court stated that "a *factual showing* that the judgment debtor has nonexempt property that is not readily subject to ordinary execution is of particular importance in applying section 31.002." *Honaker*, 192 S.W.3d at 628 (emphasis added). In that case, the court held that the lower court had abused its discretion in issuing a turnover order. *Id.* The court based its decision, in part, on the fact that there was no evidence demonstrating that the property at issue -- an

- 8 -

insurance policy, declarations, and all insurance claims or actions pursuant to that policy -- was not readily subject to execution. *Id.* at 626-28. Here, Cutting's only evidence that the property she seeks to have turned over is not readily subject to execution or garnishment comes from Rotella's deposition. In that deposition, Rotella declares that he is unsure about what will happen to any money he recovers as a result of his suit against Mid-Continent. His confusion appears to stem from the fact that he owes "everybody and their brother money," and is unaware which claims will be satisfied first. Appendix in Support of Joan Cutting's Emergency Motion for Turnover Order ("Emergency Motion Appendix") at App. 023. He also says that he is uncertain about whether he or Mark Rotella Custom Homes, Inc. owes Cutting money as a result of the judgment against him. *Id.* at App. 029. Finally, on advice of his counsel, he refuses to answer whether he personally owes Cutting any money. *Id.* at App. 030.

All these statements suggest that Rotella is uncertain about how and when he will satisfy all of his debts. The deposition also indicates that Rotella is unsure as to whether Cutting's judgment against him is a valid one that he must satisfy. He says nothing to indicate, however, that he will refuse to pay Cutting or any of his other creditors. Most importantly, there is no intimation that he intends to convert the property Joan Cutting seeks to have turned over to her into exempt assets or otherwise make those funds unavailable for garnishment, attachment, or any other

ordinary legal process.  With no evidence that these ordinary legal remedies are not available to Cutting, the court cannot grant the motion for turnover order.

In short, Cutting's only evidence in support of her contention that ordinary legal process will not be readily available comes from statements made by Rotella, none of which indicate that he will make those funds unavailable.  Although the court is sympathetic to Cutting's attempt to satisfy her judgment against Rotella, it is bound to make an *Erie*[*] guess about how a Texas court would handle this situation.  See *Travelers Casualty and Surety Company of America v. Ernst & Young LLP*, 542 F.3d 475, 482-83 (5th Cir. 2008).  *Honaker* holds that without a clear factual showing that ordinary legal process will be insufficient, insurance policies and all claims or actions pursuant to those policies can be readily obtained through ordinary legal process.  *Honaker*, 192 S.W.3d at 626-28.  The properties at issue in *Honaker* and the properties at issue here are nearly identical:  both are claims or causes of action pursuant to an insurance policy.  Absent a factual showing that Rotella intends to make such properties unavailable to Cutting, ordinary legal process is sufficient.  The court concludes that a Texas court would not grant relief under the turnover statute.

C.  *Is the Property Exempt?*

As the court has already held that Cutting cannot establish that she is entitled to relief under the Texas Turnover statute, it will not address this final element.

---

[*]     *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78-80 (1938).

III.  <u>CONCLUSION</u>

For the reasons discussed above, Cutting's motion for a turnover order pursuant to Texas Civil Practice & Remedies Code § 31.002 is **DENIED**.

**SO ORDERED**.

May 22, 2009.

*[signature: A. Joe Fish]*

A. JOE FISH
**Senior United States District Judge**