UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK ROTELLA, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-0486-G |
| MID-CONTINENT CASUALTY | ) | |
| COMPANY, | ) | **ECF** |
| | ) | |
| Defendant. | | |

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Mid-Continent Casualty

Company ("Mid-Continent") for partial summary judgment.  For the reasons

discussed below, the motion is granted.

I.  BACKGROUND

The court has already set forth the facts of this case in previous opinions.  Only

a brief recitation of the facts is necessary here.  The plaintiffs, Mark Rotella Custom

Homes, Inc., d/b/a/ Benchmark Custom Homes, and Mark David Rotella, individually

(collectively, "the plaintiffs," or "Rotella"), build custom homes.  Mid-Continent's

Brief in Support of its Motion for Partial Summary Judgment ("Motion for Summary

Judgment") at 1.  Rotella built one such home for Joan Cutting ("Cutting"), the third

party defendant in this case.  *Id.*  Cutting was dissatisfied with Rotella's services and

filed suit in state court.  *Id.* at 2.  In that underlying suit, she alleged that Rotella had

engaged in fraudulent billing practices, breached the parties' contract, and that her

home contained numerous defects.  *Id.*  Cutting prevailed in that lawsuit and

obtained a judgment against Rotella.  *Id.*  Rotella had purchased a commercial general

liability ("CGL") policy from Mid-Continent.  Rotella believed this policy required

Mid-Continent to both defend him in the underlying lawsuit and indemnify him for

any judgment Cutting obtained against him.  *Id.*  Mid-Continent, however, disagreed

and refused to defend Rotella, and has to this day refused to indemnify Rotella for

the amount of the judgment Cutting obtained against him.  *Id.*  As a result, Rotella

filed this suit against Mid-Continent.  Rotella's main assertion is that Mid-Continent

had a duty to defend him in the underlying suit and must now indemnify him for the

amount of Cutting's judgment against him.

On July 10, 2008, this court issued a memorandum opinion and order ruling

on the first motion for summary judgment filed by Rotella.  In that order, the court

concluded that Mid-Continent had a duty to defend Rotella in the underlying

lawsuit.  Summary judgment was granted on that issue.  The court denied summary

judgment, however, on the duty to indemnify.  The court reasoned that, based on the

evidence before it at the time, there was nothing to clearly establish Mid-Continent's

duty to indemnify.  Since then, the parties have filed additional motions for summary judgment.  In the instant motion, Mid-Continent seeks summary judgment on the following issues:  (1) that $718,836.33 of the damages awarded to Cutting in the underlying lawsuit are based on Rotella's fraudulent billing and therefore not covered under the policy; (2) that $1,437,672.66 of the damages awarded to Cutting in the underlying lawsuit are treble damages, also stemming from Rotella's fraudulent billing, and also not covered under the policy; (3) that Mid-Continent cannot be liable for bad faith insurance practices; (4) that Mid-Continent cannot be liable to Rotella for penalties pursuant to the Prompt Payment Statute; and (5) that the statute of limitations bars Rotella's negligent misrepresentation claim, deceptive trade practices claim, bad faith claim, and insurance code claim.  The court will address each of these issues below.

## II. ANALYSIS

### A. The Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986).  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful

end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  While all of the evidence must be viewed in a light most favorable to the nonmovants, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex*, 477 U.S. at 323.  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent[s] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v.*

*Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor.  *Anderson*, 477 U.S. at 249.  When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence.  See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993).  The nonmovants cannot survive a motion for summary judgment, however, by merely resting on the allegations in their pleadings.  *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

## B.  Part of Cutting's Judgment Against Rotella is Compensation for Rotella's Fraud

The state court held Rotella liable for common law fraud and fraud in a real estate transaction in violation of Texas Business and Commerce Code § 27.01.  Appendix to Motion for Summary Judgment at MID00002.  Although the court did not state explicitly what portion of the damages were intended as compensation for this fraud, Mid-Continent argues that the portion is easy to identify.  Specifically, Mid-Continent contends that the state court intended $718,836.33 of the economic damages and the entire $1,437,672.66 in treble damages as compensation for the "fraudulent billing and resulting overpayments made by Cutting to Rotella."  Motion for Summary Judgment at 5.

The court in the underlying suit awarded Cutting the following damages: $1,233,514.60 in economic damages, $1,437,672.66 in treble damages pursuant to § 17.50 of the Texas Business and Commerce Code, as well as interest and attorneys' fees. Appendix to Motion for Summary Judgment at MID00002. Mid-Continent contends that $718,836.33 of the $1,233,514.60 in actual damages must have been awarded as compensation for Rotella's fraud and over-billing. Motion for Summary Judgment at 8. As proof, Mid-Continent points to the fact that this is "the exact amount that Cutting alleged to be related to Rotella's fraudulent acts and it is the exact amount that she asked the court to grant her as a result of Rotella's over-billing and fraud." *Id.* In addition, the difference between $1,233,514.60 and $718,836.33 -- $514,678.27 -- is the exact figure Cutting claimed she paid to repair the defects and code violations in the home Rotella constructed. Appendix to Motion for Summary Judgment at MID00103. Finally, the treble damages award was $1,437,672.66 -- exactly twice as much as $718,836.33. Motion for Summary Judgment at 12. The treble damages were awarded pursuant to § 17.50 of the Texas Business and Commerce Code. Appendix to Motion for Summary Judgment at MID00002. This statute allows the court to award up to three times the amount of any economic damages in certain circumstances, including when the defendant engages in false, misleading, or deceptive acts. TEX. BUS. & COM. CODE § 17.50(a). Thus, it follows that the court was awarding Cutting exactly three times the amount she overpaid due

to Rotella's fraudulent billing: $718,836.33 in economic damages, and

$1,437,672.66 in treble damages.

Rotella offers no evidence to contradict Mid-Continent's assertion that

$718,836.33 of the economic damages awarded by the state court were compensation

for Rotella's fraudulent over-billing. Nor does he contend that the $1,437,672.66 in

treble damages were not awarded for fraud. Based on the facts presented by Mid-

Continent, the court is convinced that $718,836.33 of the actual damages, and the

entire $1,437,672.66 in treble damages, were awarded by the state court as

compensation for Rotella's fraudulent over-billing. No reasonable jury could find

otherwise.

### C. <u>The Policy Does Not Require Mid-Continent to Indemnify Rotella for Damages Incurred Through Fraudulent Conduct</u>

Having thus decided, the court must now evaluate Mid-Continent's argument

that it has no duty to indemnify Rotella for any liability he incurred for his

fraudulent acts -- here, $718,836.33 in economic damages and $1,437,672.66 in

treble damages. Mid-Continent asserts that Rotella's CGL policy only provided

coverage for "bodily injury" or "property damage" caused by an "occurrence."

Motion for Summary Judgment at 6. The policy defines an "occurrence" as "an

accident, including continuous or repeated exposure to substantially the same general

harmful conditions." Appendix to Motion for Summary Judgment at MID00021.

Fraud, Mid-Continent contends, is not an "occurrence" as defined by the CGL policy.

In support of this argument, Mid-Continent cites *Dresser Industries, Inc. v. Underwriters At Lloyd's, London*, 106 S.W.3d 767 (Tex. App.--Texarkana 2003, pet. denied). *Dresser Industries* involved an insurance policy that defined an "occurrence" as "an accident or event . . . during the policy period neither expected nor intended from the standpoint of the insured." *Id.* at 770. Based on this language, the court held that fraud -- an intentional tort -- does not constitute an "occurrence." *Id.* at 774.

The definition of "occurrence" in Mid-Continent's policy is not as explicit as the definition at issue in *Dresser Industries*. Mid-Continent's definition does not include the language "neither expected nor intended from the standpoint of the insured." Nevertheless, the word accident -- included in Mid-Continent's definition of an "occurrence" -- is defined as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." BLACK'S LAW DICTIONARY 15 (7th ed. 1999). Thus, the word accident necessarily implies a lack of intent.

Moreover, there is a specific exclusion in the policy for property damage that is "expected or intended from the standpoint of the insured." Appendix to the Motion for Summary Judgment at MID00010. Based on this exclusion, and on the definition of "occurrence," the court concludes that the policy does not provide coverage for damages incurred as a result of intentional acts. Fraud, as *Dresser Industries* notes, is an intentional tort. *Dresser Industries*, 106 S.W.3d at 774. Thus, Mid-Continent does

not have a duty to indemnify Rotella for any of the judgment incurred as a result of his fraudulent conduct:  $718,836.33 in economic damages, and $1,437,672.66 in treble damages.

Rotella has only one counter-argument to Mid-Continent's assertion that it is not liable for any damages Rotella incurred through his fraudulent conduct:  that Mid-Continent is strictly liable for the entire judgment Cutting has against Rotella, "because [Mid-Continent] never defended this claim."  Plaintiffs' Response to Defendant's Partial Motion for Summary Judgment and Supporting Brief ("Response") at 2.  Rotella states, "[i]f you don't defend and a negative result occurs to your insured, then you as an insurer must pay."  *Id.* at 4.  In support of this statement, Rotella cites *Mid-Continent Casualty Company v. JHP Development, Inc.*, 557 F.3d 207 (5th Cir. 2009).  The court does not read *JHP Development* to support such a statement.  The opinion, in fact, stands for the opposite proposition.  The Fifth Circuit stated in *JHP Development* that "[t]he duty to defend is distinct from, and broader than, the duty to indemnify."  *Id.* at 213 (citing *Utica National Insurance Company of Texas v. American Indemnity Company*, 141 S.W.3d 198, 203 (Tex. 2004)).

Moreover, the court in *JHP Development* carefully evaluated whether there was a duty to indemnify the insured for a judgment obtained in an underlying suit, despite the fact that the insurer had refused to defend the insured in that underlying suit.  The facts of *JHP Development* are nearly identical to those at issue here.  There, a

builder performed work with which its customer was unsatisfied.  *Id.* at 210.  The customer sued and the builder looked to Mid-Continent to defend it.  *Id.*  Mid-Continent refused.  *Id.*  The customer obtained a judgment against the builder, and the builder then filed suit against Mid-Continent, seeking a determination that Mid-Continent had a duty to indemnify and defend.  *Id.*  The court, in evaluating whether there was a duty to indemnify, specifically addressed several exclusions in the policy.  *Id.* at 213-17.  Although the court concluded that the exclusions did not apply, and that there was thus a duty to indemnify, the court would not have bothered to discuss the exclusions at length if the insurance company was strictly liable for damages incurred by the insured in an underlying suit.  In short, this court has found no support for Rotella's assertion that Mid-Continent is strictly liable for the judgment Cutting has against him.  Instead, "[t]he facts actually established in the underlying suit control the duty to indemnify."  *Id.* at 213.

The court finds Rotella's only argument unpersuasive.  For the reasons discussed above, Mid-Continent's motion for summary judgment on the issue of its duty to indemnify Rotella for $718,836.33 of actual damages, and $1,437.672.66 of treble damages is granted.

### D.  Bad Faith Insurance Practices

Mid-Continent next seeks summary judgment on Rotella's claim against it for bad faith insurance practices.  The defendant argues that it cannot be liable for bad

faith insurance practices for several reasons.  First, it contends that the underlying

suit was a third party claim, and that Texas law does not recognize any common law

duty of good faith and fair dealing in connection with third-party claims.  Motion for

Summary Judgment at 15.  In support of this argument, Mid-Continent cites

*Maryland Insurance Company v. Head Industrial Coatings & Services, Inc.*, 938 S.W.2d 27

(Tex. 1996).  In *Maryland Insurance*, the Court stated that "an insured is fully

protected against his insurer's refusal to defend or mishandling of a third-party claim

by his contractual and *Stowers* rights.  Imposing an additional duty on insurers in

handling third-party claims is unnecessary and therefore inappropriate." *Id.* at 28-29.

Other courts agree.  In *M.S.I. Marketing, Inc. v. Hartford Lloyd's Insurance Company*,

2004 WL 2297134, *2 (N.D. Tex. Oct. 12, 2004), the court, relying on *Maryland*

*Insurance*, dismissed a claim for breach of the duty of good faith and fair dealing.

*M.S.I. Marketing*, 2004 WL 2297134 at *2.  It stated, "the refusal to defend cannot

give rise to a tort claim for breach of the duty of good faith and fair dealing." *Id.*  See

also *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997)

(stating that Texas recognizes "the bad-faith tort only in the first party context").

Here, Rotella's claim for breach of the duty of good faith and fair dealing is

based on Mid-Continent's refusal to defend him in the underlying case and to

indemnify him for the full amount of the judgment Cutting now has against him.  *See*

Original Petition (attached to Mid-Continent Casualty Company's Notice of

Removal) at 4.  *Maryland Insurance* and its progeny have held that an insurance

company's refusal to defend does not give rise to a bad faith insurance practices claim

in Texas.  And, as discussed above, the duty to indemnify depends on the facts

established in the underlying suit.  *JHP Development*, 557 F.3d at 213.  It is the duty

of this court -- or a jury, if there is a genuine issue of material fact -- to determine

whether those facts give rise to a duty to indemnify.  Any argument otherwise is

merely a re-assertion of Rotella's earlier contention that Mid-Continent is strictly

liable for any damages Rotella incurred in the underlying suit.  As already discussed,

this argument is inconsistent with Texas law.  The defendant's motion for summary

judgment on Rotella's claim for bad faith insurance practices is granted.

## E.  The Prompt Payment Statute

Mid-Continent next argues that it is not liable to Rotella for any penalties

under the Prompt Payment of Claims statute because that statute "does not apply to

indemnity payments."  Motion for Summary Judgment at 4.  The Prompt Payment of

Claims statute, codified at Texas Insurance Code § 542.060, states that "[i]f an

insurer that is liable for a claim under an insurance policy is not in compliance with

this subchapter, the insurer is liable to pay . . . interest on the amount of the claim at

the rate of 18 percent a year as damages, together with reasonable attorney's fees."  A

recent Texas Supreme Court case interpreted this language and held that "the

Legislature intended that article 21.55 apply to claims personal to the insured."[1]

*Evanston Insurance Company v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 675

(Tex. 2008).  Thus, the court held, an insured is not entitled to relief under the

Prompt Payment of Claims statute if the insured is seeking coverage to satisfy a

judgment a third party has against it, or a "loss incurred in satisfaction of a

settlement."  *Id.*  An insured seeking coverage for these types of losses has not directly

suffered the loss.  The court in *Evanston* specifically stated that the loss the insured

seeks to recover must have been suffered "directly by the insured" in order for the

Prompt Payment of Claims statute to apply.  *Id.*

Here, the loss was not suffered directly by Rotella.  Rather, the loss was

suffered by Cutting.  Rotella made a third-party claim seeking coverage for the

injuries suffered by Cutting.  According to *Evanston*, Rotella is not entitled to damages

or attorney's fees pursuant to Texas Insurance Code § 542.060.  Mid-Continent's

motion for summary judgment on this issue is granted.

### F.  The Summary Judgment Standard When the Movant Bears the Burden of Proof at Trial

Mid-Continent seeks summary judgment on the affirmative defense of statute

of limitations.  Because Mid-Continent will bear the burden of proof on this issue at

trial, the court applies a slightly different summary judgment standard.

---

[1]	Article 21.55 is the older version of Texas Insurance Code § 542.060.
Although the statute has been recodified, it is substantively unchanged.

- 13 -

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[2]  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  When, as here, the movant bears the burden of proof at trial on an affirmative defense for which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure all the essential elements of the claim or defense to warrant judgment in its favor."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  A defendant moving for summary judgment on an affirmative defense, as here, must make a showing sufficient for the court to

---

[2]     The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

hold that no reasonable trier of fact could find other than for the defendant;

otherwise, there is a genuine issue of fact and summary judgment cannot be granted.

See *Anderson*, 477 U.S. at 248.

Once the moving party has carried its burden, the nonmovants must then

direct the court's attention to evidence in the record sufficient to establish that there

is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  While all of

the evidence must be viewed in a light most favorable to the motion's opponents,

*Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144,

158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will

satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corporation*,

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125,

1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  If the nonmovants' "evidence is

merely colorable, or is not significantly probative, summary judgment may be

granted."  *Anderson*, 477 U.S. at 249-50.

    G.  Mid-Continent Timely Pleaded Its Statute of Limitations Defense

Before evaluating Mid-Continent's argument that several of Rotella's claims are

barred by the statute of limitations, the court must first decide whether, as Rotella

contends, Mid-Continent failed to timely plead this defense.  The time-line relevant

to this analysis is as follows:  This case was removed to federal court on March 19,

2008.  On May 15, 2008, Rotella filed a motion for summary judgment.  Mid-

Continent responded to that motion on June 4, 2008.  On September 25, 2008, Mid-Continent filed a motion for leave to file its first amended answer.  Mid-Continent attached its proposed first amended answer as an attachment to that motion.  The court granted that motion on December 29, 2008.  Mid-Continent filed its first amended answer one day later on December 30, 2008.  The first amended answer asserts the statute of limitations as an affirmative defense.

Rotella argues that Mid-Continent must have asserted this defense at an earlier date.  The court disagrees.  Mid-Continent's motion to file an amended answer on September 25, 2008 was timely under the court's scheduling order.  Thus, Mid-Continent's amended answer was timely.  Moreover, the assertion of the defense in the amended answer put Rotella on notice that Mid-Continent intended to assert the statute of limitations defense.  *Myart v. City of San Antonio, Texas*, 2007 WL 869579, *1 (W.D. Tex. March 20, 2007) (holding that where the defendants moved to amend their answers prior to the deadline for amending pleadings, in order to reflect the defense of limitations, the plaintiff had notice about the issue of limitations); see also *Simi Investment Company, Inc. v. Harris County, Texas*, 236 F.3d 240, 252 n.16 (5th Cir. 2000) ("[A]n affirmative defense . . . is considered waived if not specifically pleaded in the answer *or in an amended answer permitted under FED. R. CIV. P. 15(a)*.") (emphasis added), *cert. denied*, 534 U.S. 1022 (2001).

Rotella argues that Mid-Continent should have asserted the statute of
limitations defense in the first responsive pleading it filed in state court, here, the
response to Rotella's motion for summary judgment.  However, the court has found
no authority for that proposition.[3]  Mid-Continent was not required to assert its
affirmative defenses in its response to the motion for summary judgment.  The court
holds that Mid-Continent timely asserted its statute of limitations defense.

H.  <u>Rotella's Negligent Misrepresentation Claim</u>
<u>Is Barred by the Statute of Limitations</u>

Rotella asserts a claim of negligent misrepresentation in his Original Petition.
Original Petition (attached to Mid-Continent Casualty Company's Notice of
Removal) at 5.  Mid-Continent now seeks summary judgment on that claim, arguing
that it is barred by the statute of limitations.  Motion for Summary Judgment at 21.
In *Milestone Properties, Inc. v. Federated Metals Corporation*, 867 S.W.2d 113, 118-19
(Tex. App.--Austin 1993, no writ), the court addressed whether negligent

---

[3]      Rotella cites *West Texas Agriplex v. Mid-Continent Casualty Company*, 2004
WL 1515122 (N.D. Tex. July 7, 2004), in support of his argument that Mid-
Continent must have asserted its statute of limitations defense in its response to the
motion for summary judgment.  This case holds that the only time an affirmative
defense may be pleaded in a motion for summary judgment is if that motion is the
first responsive pleading filed.  *West Texas Agriplex*, 2004 WL 1515122 at *8.  It does
not state that a party must assert an affirmative defense in a *response* to a motion for
summary judgment.  Moreover, here, the deadline to file amended pleadings had not
yet passed when Mid-Continent filed its response to Rotella's motion for summary
judgment.  In short, the court does not read *West Texas Agriplex* to hold that Mid-
Continent must have asserted its statute of limitations defense in its response to
Rotella's motion for summary judgment.

misrepresentation claims are subject to a two-year or four-year statute of limitations. The court concluded that a two-year statute of limitations applied. *Id.* at 119. Since *Milestone*, the two-year statute of limitations for negligent misrepresentation claims has been accepted by the Texas Supreme Court. *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998). Thus, it appears to be settled law in Texas that negligent misrepresentation claims are subject to a two-year statute of limitations.

Rotella filed his Original Petition on August 7, 2007. His cause of action for negligent misrepresentation must therefore have accrued on or after August 7, 2005. Under Texas law, when, as here, "the definition of accrual is not prescribed by statute and thus has been left to the courts . . . a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). Rotella argues that his cause of action accrued on August 12, 2005, the date that Mid-Continent informed Rotella it would not defend him in the underlying suit. Response at 9. Mid-Continent, however, argues that under Texas law, the statute of limitations for a negligent misrepresentation claim accrues not on the date when coverage is denied, but on the date when the alleged misrepresentation was made. Mid-Continent's Reply to Rotella's Response to Mid-Continent's Motion for Partial Summary Judgment ("Reply") at 13 (citing *Anderson v. American Tank & Vessel Inc.*, 2007 WL 954228, *4-5 (S.D. Tex. March 26, 2007) (holding that the statute of

limitations for a negligent misrepresentation claim began to run not on the date the

insurance company denied coverage, but on the date the insurer misrepresented to a

worker that he had no right to seek workman's compensation benefits).  Here, Mid-

Continent argues, the only misrepresentation alleged by Rotella is that Mid-

Continent sold "him a policy that did not provide the coverage he thought it did."

Reply at 13.  Thus, Mid-Continent contends the statute of limitations began to run

on the day Rotella purchased the policy.

The court agrees that the only misrepresentation alleged in the pleadings is

that Mid-Continent sold Rotella a policy that does not provide the coverage he

anticipated.  Here, however, the parties dispute exactly what coverage the policy

provides.  Under Texas law, the discovery rule can "defer accrual of a cause of action

until the plaintiff knew or, exercising reasonable diligence, should have known of the

facts giving rise to the cause of action."  *Quigley v. Bennett*, 256 S.W.3d 356, 360

(Tex. App.--San Antonio 2008, no pet.).  Since the parties do not agree as to what

coverage the policy provides, it is possible -- although the court does not so hold -- the

discovery rule deferred the accrual of Rotella's cause of action against Mid-Continent

until the date Mid-Continent denied coverage.

Even if it is assumed that the discovery rule applies, however, Rotella's claims

are still barred by the statute of limitations.  Mid-Continent sent Rotella a letter on

July 1, 2005, informing him that, after its review of Cutting's first amended petition,

it did not believe the policy provided coverage and that it would refuse to defend him

in the underlying suit.  Appendix to Motion for Summary Judgment at MID00678.

Thus, from July 1, 2005, Rotella was aware of all the facts giving rise to his negligent

misrepresentation claim.

Although Mid-Continent sent a second letter denying coverage on August 12,

2005, this letter does not affect the court's decision.  Exhibit L in Appendix to

Plaintiff's Motion for Summary Judgment and Memorandum Brief in Support.  The

August 12, 2005, letter stated that after Mid-Continent's review of Cutting's second

amended petition, it would still not provide coverage.  *Id.*  Had the second amended

petition asserted any new claims against Rotella or pleaded any additional facts

affecting coverage under the CGL policy, the discovery rule would dictate that the

statute of limitations began to run on August 12, 2005.  *Quigley*, 256 S.W.3d at 360.

The only significant changes made in the second amended petition, however, did not

affect Rotella.  In her second amended petition, Cutting adds an additional

defendant, Caperton Johnson, and adds a paragraph which provides more detail

regarding the construction defects.  Exhibit 3 to the Appendix to Reply to

Defendant's Response to the Summary Judgment and Brief in Support ¶¶ 13-17.  The

first amended petition, however, pleaded that Rotella was responsible for many

construction defects.  Exhibit 2 to the Appendix to Reply to Defendant's Response to

the Summary Judgment and Brief in Support ¶¶ 22-23.  The level of detail pleaded

about those defects did not affect Mid-Continent's analysis of whether it would

provide coverage.  In short, the second amended petition added no new claims against

Rotella, and pleaded no new facts affecting Rotella.  Thus, Cutting pleaded in her first

amended petition all the facts necessary for Mid-Continent to decide whether it

would provide coverage.  Under the discovery rule, Rotella knew or should have

known all the facts giving rise to his claim of negligent misrepresentation when Mid-

Continent denied coverage based on its review of the first amended petition.  *Quigley*,

256 S.W.3d at 360.

Having concluded that the discovery rule did not defer the accrual of Rotella's

negligent misrepresentation claim, the court must grant summary judgment to Mid-

Continent on this claim.

### I.  Rotella's Deceptive Trade Practices Claim is Barred by the Statute of Limitations

Under Texas law, a cause of action under the deceptive trade practices act

("DTPA") is governed by a two year statute of limitations.  TEX. BUS. & COM. CODE

ANN. § 17.565 (Vernon 2002).  Rotella claims Mid-Continent violated the DTPA by

making false representations about what coverage the CGL policy provided.  As

Rotella puts it, "Simply stated, the Defendant sold the Plaintiffs insurance coverage

representing they would defend the Plaintiffs and provide liability coverage which the

Defendant subsequentially [sic] denied."  Original Petition (attached to Mid-

Continent Casualty Company's Notice of Removal) at 4.  In other words, Rotella

bases his DTPA claim on the same facts giving rise to his negligent misrepresentation claim.  As the court has already held, Rotella knew or should have known of these facts on July 1, 2005 -- when Mid-Continent denied coverage based on its review of Cutting's first amended petition.  Thus, for the same reasons discussed above, Rotella's DTPA claim is untimely.  Mid-Continent's motion for summary judgment on the DTPA claim is granted.

### III.  <u>CONCLUSION</u>

For the reasons discussed above, Mid-Continent's motion for partial summary judgment is **GRANTED**.  This order disposes of all Rotella's claims against Mid-Continent except one:  the court has not yet determined whether Mid-Continent must indemnify Rotella for $514,678.27 -- the amount of actual damages not arising out of Rotella's fraudulent conduct.  The court's holding in this opinion also disposes of the majority of Cutting's claims against Mid-Continent.  Cutting filed a cross-claim against Mid-Continent which, (1) seeks recovery pursuant to the insurance policies, (2) requests a declaration that the insurance policies provide coverage for her judgment against Rotella and that Mid-Continent must indemnify Rotella, and (3) claims Mid-Continent breached its  contract with Rotella by refusing to provide coverage.  As discussed above, Mid-Continent has no duty to indemnify Rotella for any damages he incurred as a result of his fraudulent conduct, namely, $718,836.33 in actual damages and $1,437,672.66 in treble damages.  Thus, Cutting's only

remaining claim against Mid-Continent is for the $514,678.27 awarded as actual

damages for non-fraudulent conduct.

     **SO ORDERED**.

June 10, 2009.

_____
A. JOE FISH
**Senior United States District Judge**